IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:25CR172 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| ERNEST A. FULLER II, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

The United States of America, by its counsel, David M. Toepfer, United States Attorney, and Jennifer J. King, Assistant United States Attorney, respectfully submits this memorandum setting forth the United States' position regarding the sentencing for Defendant, Ernest A. Fuller II ("Fuller").  For the reasons set forth below and those to be articulated at the sentencing hearing, the United States submits that a sentence within the guideline range (168 to 210 months) is appropriate in this case.

On April 16, 2025, Fuller was indicted with one count of Receipt and Distribution of Visual Depictions of Real Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(2), and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (Indictment).  Fuller entered a guilty plea to Count One on December 16, 2025. (Presentence Report Investigation ("PSR"), PageID 3). On Count 1, Fuller faces a statutory mandatory minimum term of imprisonment of 5 years up to 20 years; a fine of $250,000; supervised release for a minimum of five years up to life; and a special assessment of $100.

1

According to the Presentence Investigation Report, Fuller's offense level is 34, and he is a criminal history category II.  (PSR, PageID 21).  Based on the current PSR calculations, Fuller's guideline imprisonment range is 168 to 210.  (Id.).

## I.  SENTENCING GUIDELINES COMPUTATION

Fuller's total offense level is properly calculated as 34 after acceptance of responsibility. (PSR, PageID 7-8).  The guideline range is properly calculated in the PSR with a number of enhancements appropriately applied by the probation department and it corresponds with the plea agreement calculation. (Id., PageID 3). Fuller made one objection to the PSR that is unrelated to the guideline computation.[1] (Id., PageID 24). The government agrees with the proper calculation. (Id.).

Fuller argues for a downward variance based on perceived policy reasons that should not affect the guideline calculation. (R. 35: Def. Sentencing Memorandum [SEALED], PageID 9-14). In a series of protestations, Fuller disagrees with the 2-point enhancement, under § 2G2.2(b)(2), for images involving a prepubescent minor; the 2-point enhancement, under § 2G2.2(b)(6), for the use of a computer; and the 5-point enhancement, under § 2G2.2(b)(7), for an offense involving over 600 images.  He bases each of these objections on United States v. Hennessey, a 2015 unreported district court case.  3:15CR131, Dkt. 25.

Fuller ignores the fact that after Congress established a 5-year mandatory minimum for certain child pornography trafficking offenses under the PROTECT Act.  The Sentencing Commission amended § 2G2.2 in 2004.  As the Commission noted, "[w]hen Congress establishes a mandatory minimum penalty, the Commission generally has four approaches available for

---

[1] The government agrees with probation's response to defendant's objection to the "selfie" and will produce at sentencing.

selecting the appropriate base offense level." *The History of the Child Pornography Guidelines, United States Sentencing Commission, October 2019,* p.44.  "First, the Commission may set the base offense level for the offense so that the base offense level for a Criminal History Category I offender corresponds to the first guideline range on the sentencing table with a minimum guideline range in excess of the mandatory minimum." *Id.*  "Second, the Commission may set the base offense level to the guideline range that is the first one on the table to include the mandatory minimum at any point within the range." *Id.*, at 45.  "Third, the Commission may set the base offense level below the mandatory minimum and rely on specific offense characteristics and Chapter Three adjustments to reach the statutory mandatory minimum." *Id.*

The Commission chose the third option.  "The Commission determined that a base offense level of level 22 is appropriate for trafficking offenses because, when combined with several specific offense characteristics which are expected to apply in almost every case (e.g., use of a computer, material involving children under 12 years of age, number of images), the mandatory minimum of 60 months' imprisonment will be reached or exceeded in almost every case by the Chapter Two calculations."  *U.S.S.G. App. C, Amendment 664*, pp. 58-59.  Citing statistics that show how often these enhancements are applied simply proves the point.  Each of these enhancements are baked into the Commissions calculus in setting the base offense level at 22.  To fail to apply any of these enhancements would be to give the Defendant an unwarranted reduction in his offense level. The 6th Circuit agrees:

> In drafting § 2G2.2, the Sentencing Commission explicitly considered whether the computer enhancement would be frivolous. See *U.S.S.G.App. C, Amend. 664*, pp. 58–59. The Commission purposefully set both the base offense level and the degree of enhancement with the frequency of computer use in mind. *Id*. We have adopted that rationale and rejected arguments that the computer enhancement should not be used simply because it is applied frequently. See, e.g., United States v. Cunningham, 669 F.3d 723, 732–33 (6th Cir. 2012) (affirming the district

court's rejection of defendant's argument ''that the frequency with which the enhancements applied in other cases rendered them invalid'')."

United States v. Walters, 775 F.3d 778 (6th Cir. 2014), 786-87.  See also, United States v. Bistline, 665 F.3d 758 (6th Cir. 2012).

The Fuller's first policy objection is to the application of the "prepubescent minor" enhancement under United States Sentencing Guideline 2G2.2(b)(2).  The Defendant argues pursuant to Hennessey that it cannot be an aggravating factor if it is present in almost any child pornography case. Most of the images in the Defendant's collection of nearly 1,900 files of CSAM were of minors who were prepubescent or a minor who had not obtained the age of 12 years.

In United States v. Lynde, 926 F. 3d 275 (6th Cir. 2019), the defendant made a similar argument.  The Sixth Circuit Court of Appeals ruled that:

> We have also rejected Lynde's claim that § 2G2.2's enhancements must be disregarded because they apply in most cases and do not adequately distinguish among offenders.  See United States v. Walters, 775 F. 3d 778 (6th Cir. 2015).  If the "harm is real, we have reasoned the enhancement is valid, no matter how often it applies.

The Fuller's second policy objection is to the application of the "use of a computer" enhancement under United States Sentencing Guideline 2G2.2(b)(6).  The Defendant again relies on the Hennessey opinion that it cannot be an "aggravating factor" if it is present in almost any child pornography case.  The same reasoning of Lynde and Walters applies to this objection. In the case at hand, there is little factual dispute that a computer was used.

The Sixth Circuit Court of Appeal has addressed a similar objection in United States v. Holland, 799 Fed Appx 380 (6th Cir. 2020).  In Holland, the Sixth Circuit ruled that:

> We have already rejected the idea that the use of a computer enhancement should be ignored because it is so frequently used.  See United States v. Walters, 775 F. 3d 778 (6th Cir. 2015).  Simply put, the argument that 'computers are present in every case does not begin to approach the showing necessary for a court to decline to apply 2G2.2 out of hand.

The Sixth Circuit in rejecting the challenge to the enhancement reasoned that "the enhancement in question was likely adopted precisely because computers are so often used in child pornography crimes.  United States v. Holland, 799 Fed Appx 380 (6th Cir. 2020).

The Fuller's final policy objection is to the application of the "number of images" enhancement under United States Sentencing Guideline 2G2.2(b)(7)(D).  As with the previous two issues, Fuller relies on the Hennessey opinion and the "ease with which an individual can accumulate images with today's technology." The amount of images involved in this case was determined to be 65,498 images based on the 1,898 image files and the 848 video files  (calculated at 75 images per video outlined in the Commentary Note to United States Sentencing Guideline 2G2.2).  See 2G2.2 Commentary Note 6(B)(ii).  Fuller's possession is over 100 times the maximum threshold of 600 images. Simply because Fuller was using a more efficient technology to victimize a greater number of children, he should not be given a variance.

The government therefore requests that the offense level computation listed in the PSR be adopted by the Court.

## II.      APPLICATION OF § 3553(A) FACTORS

### A.      NATURE AND CIRCUMSTANCES OF THE OFFENSE

The United States refers the Court to the factual description included in the "PSR". (Id., PageID 4-6).  Most significantly, Fuller's distribution and possession of child pornography involved him trafficking child pornography over a nearly three-year time span.

Before the events in the underlying case began, Fuller amassed a criminal history centered around domestic violence with his wife. (Id., PageID 8-11). Although no child pornography offenses were discovered during this time, Fuller was engaged with Torrent programs while he was on probation and committing domestic violence. (Id.). While law enforcement observed

Fuller's exchange of CSAM online, they noted a break in activity at his residence during the period the protection order kept Fuller from living at his Brook Park residence.  Once he was permitted back in the home with his wife and child, Fuller began distributing CSAM again.

Over a 15-month span, Fuller directly distributed hundreds of files through Torrent programs to Ohio State Highway Patrol. (Id., PageID 4). The search warrant executed at Fuller's revealed devices containing the evidence of the Torrent programs and hundreds of additional files of CSAM saved to his desktop and laptop.  (Id., PageID 4-5).  Not only did his devices contain the rape, torture, and abuse of toddlers to teens, but it also contained evidence that Fuller regularly deleted the CSAM he was consuming with programs like CCleaner. (Id.).  Along with the computers, agents found CDs that contained child pornography and a child size mannequin torso with an erect penis attached.

B.      HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Fuller grew up in various places throughout the United States and described them as "suburban" without out exposure to drugs or violence (Id., PageID 13).  Although he did not graduate high school, he has held employment as a machine operator and through various temporary jobs. (Id., PageID 20).  Alcohol abuse has been a consistent theme throughout Fuller's adult life and resulted in court ordered treatment, but rarely any significant period of cessation. (Id., PageID 19-20).  Fuller also appears to suffer from various physical and mental health conditions.  However, there is no explanation or evidence of causation or even correlation between his health and desire for child pornography.

As previously noted, Fuller has multiple arrests for domestic violence. (Id., PageID 8-10). His three criminal history points are the result of convictions stemming from physical violence he directed at his wife and at times, in front of his child. (Id.).  Fuller's alcohol abuse also played a

6

role in his domestic violence.  While Fuller was on state probation in 2024 and 2025, he "never tested positive alcohol or marijuana" but was still using—"up to a pint of vodka" daily – until his arrest in April 2025. (Id., PageID 11, 19).

C.  NEED FOR THE SENTENCE IMPOSED TO REFLECT SERIOUSNESS OF OFFENSE, PROMOTE RESPECT FOR THE LAW, AND PROVIDE JUST PUNISHMENT

In Bistline, the Sixth Circuit noted a reasonable sentence must reflect the seriousness of the offense or provide for any general or specific deterrence.[2]  A sentence at or near the mandatory minimum would offend the seriousness of the offense and the impact on its victims.  Congress has plainly indicated "[e]very instance of viewing images of child pornography represents a . . . repetition of their abuse."[3]  The words of Congress and many courts echo those of the victims themselves.  For many victims, the downloading of images is just as traumatic as the initial act of abuse.  These victims express embarrassment of being depicted in these extremely vulnerable situations.  They also express fear of being watched and subsequently recognized by people like Fuller who fixate on videos and images of them.

Fuller committed child exploitation offenses in the comfort and privacy of his own home. He not only sought child pornography but distributed it across the internet.  He alone is responsible for his actions and the impact they have on the children depicted in the images he possessed.  The sentence imposed should reflect the seriousness of Fuller's actions, promote respect for the law, and provide just punishment.

---

[2] See United States v. Bistline, 665 F.3d 767-68 (6th Cir. 2012).
[3] 18 U.S.C. § 2251 (Historical and Statutory Notes: Child Pornography Prevention of 2006, Pub. L. No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)).

D.  NEED FOR SENTENCE TO AFFORD ADEQUATE DETERRENCE

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence.[4]  In United States v. Goldberg,[5] the court opined:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded, consumed himself and disseminated to others.  The greater the customer demand for child pornography, the more that will be produced.  Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor.  The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

In fact, the Bistline Court reversed a district court that failed to see any importance in general deterrence.[6]  The district court stated, "general deterrence . . . will have little [if] anything to do with this particular case."[7]  The Sixth Circuit found "that [the district court's] statement is inexplicable, and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]'"[8]

---

[4] United States v. Irey, 612 F.3d 1160, 1206 (citing New York v. Ferber, 458 U.S. 747, 760 (1982)) (The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product); Osbourne v. Ohio, 495 U.S. 103, 109-10 (1990) (It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand); United States v. Goff, 501 F.3d 250, 261 (3rd Cir. 2007) (Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.); United States v. Barevich, 445 F.3d 956, 959 (7th Cir. 2006) (The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.  Transporting and receiving child pornography increases market demand.  The greater concern under the Guidelines is for the welfare of these exploited children.).

[5] 491 F.3d 668, 672 (7th Cir. 2007).

[6] See Bistline, at 767.

[7] Id.

[8]  Id. (citing United States v. Camiscione, 591 F.3d 823, 834 (6th Cir. 2010)).

III.     **MONETARY PENALTIES**

    A.     FINE AND 18 U.S.C. § 3014 ADDITIONAL SPECIAL ASSESSMENT

The PSR report found Fuller is unable to pay a fine within the guideline range.  (PSR, PageID 21).  The government would defer to the Court regarding a fine but would first request that full restitution be ordered to the identified victims.

Fuller is not subject to the $5,000 Additional Special Assessment under 18 U.S.C. § 3014. Due to the lapse in appropriations at the time of the plea agreement, the government is not seeking this assessment and again requests that the restitution to the identified series bellowed be ordered to the victims.

    B.     THE AMY, VICKY, AND ANDY CHILD PORNOGRAPHY VICTIM ASSISTANCE ACT OF 2018 (AVAA) GENERALLY

The *Amy, Vicky, and Andy Child Pornography Victim Assistance Act* of 2018 (AVAA), enacted on December 7, 2018, made a number of changes to existing child pornography laws, specifically with regard to restitution. Specifically, the law: (1) provides that restitution must be ordered for all "child pornography trafficking offenses" of no less than $3,000 per victim; (2) imposes a new special assessment for those defendants who are convicted of certain child pornography related offenses; (3) permits victims of child pornography trafficking offenses to seek a one-time payment of $35,000 from a reserve fund; (4) amends the definition of "sexually explicit conduct" under 18 U.S.C. § 2256(2); and (5) adds 18 U.S.C. § 3509(m)(3), which allows victims, their attorneys, and any purported expert to access a victim's own sexually explicit images during any criminal proceeding.  Of particular importance in this case is the provision that sets a <u>floor</u> of $3,000 in restitution to the victims depicted in the Defendant's images that have submitted a claim for a monetary loss.

9

C.      RESTITUTION REQUESTS IN THIS CASE

The National Center for Missing and Exploited Children (NCMEC) identified 488 image files and 110 video files from Fuller's collection that depicted children previously identified by law enforcement[9].  These identified images came from 63 separate series.  Of those, 10 victims have submitted requests for restitution in Fuller's case.

| Victim/Series | # of images/ videos | Restitution requested | Payable to: |
|---|---|---|---|
| "Aprilblonde" aka "April" | 3 images 12 videos | $10,000 | "Restore the Child in Trust for April" Restore the Child, PLLC, 2522 N. Proctor St, Ste 85, Tacoma, Washington, 98406. |
| "HG1" aka "Eliza" | 1 image 1 video | $3,000 | "Jones Day in trust for Eliza", Jones Day, Attn: Andrew Bjorklund, 500 Grant Street, Suite 4500 Pittsburgh, PA 15219-2514 |
| "JBN Flowers1" aka "Julie" | 1 video | $10,000 | "Restore the Child in Trust for Julie" Restore the Child, PLLC, 2522 N. Proctor St., Ste 85, Tacoma, Washington, 98406 |
| "Lighthouse1" | 1 image | $10,000 | "Marsh Law Firm PLLC in trust for Jenny", Marsh Law Firm PLLC ATTN: Jenny PO Box 4668 #65135 New York, NY  10163-4668 |
| "RCA" aka "Alex" | 8 images 8 videos | $5,000 | "Restore the Child I/T/F Alex" Restore the Child, PLLC, 2522 N. Proctor St, Ste 85, Tacoma, Washington, 98406 |
| "RedGlassesCry" aka "Taylor" | 1 image 1 video | $3,000 | "Utah Crime Victims Legal Clinic in trust for Taylor", Utah Crime Victims Legal Clinic, Attn: Taylor, 404 East 4500 South Ste B24, Salt Lake City, Utah 84107 |
| "Sweet White Sugar" aka "Pia" | 2 images 2 videos | $7,500 | Deborah A. Bianco in trust for Pia |

---

[9] According to forensic reports and search warrant productions, Fuller possessed, received, and distributed 1,617 image files and 280 video files of child pornography.  Thus, most of the children depicted in these files have yet to be identified.

10

| | | | P.O. Box 6503, Bellevue, WA 98008 |
|---|---|---|---|
| "Tara" aka "Sloane" | 1 image 2 videos | $10,000 | "Carol L. Hepburn I/T/F Sloane" PO Box 17718, Seattle, WA 98127 |
| "Vicky" aka "Lily" | 2 images 3 videos | $10,000 | "Carol L. Hepburn I/T/F Lily" PO Box 17718, Seattle, WA 98127 |
| "ZooFamily1" aka "Ali" | 1 image 1video | $3,000 | "Moore & Van Allen PLLC (Ali)", Moore & Van Allen PLLC (Ali), Attn: Sarah Byrne/049549.1, 100 N. Tryon Street, Suite 4700 Charlotte, NC 28202 |

The Government contacted Fuller's counsel to determine if an amount of restitution could be agreed upon. Should no agreement be reached, the Government would respectfully submit the requests above and ask that the amounts of restitution be awarded and in accordance with caselaw cited above.  At a minimum, each victim should be awarded at least the $3,000 minimum restitution award as required by statute.

## VI.  CONCLUSION

For these reasons and those to be articulated at the sentencing hearing, the United States respectfully requests that this Court impose a sentence within the sentencing guideline range.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By:    /s/ Jennifer J. King
      Jennifer J. King (OH: 0089375)
      Assistant U.S. Attorney
      801 West Superior Avenue, Suite 400
      Cleveland, Ohio 44113
      Tel. No. (216) 622-3759
      E-mail: Jennifer.King@usdoj.gov